NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| NET2PHONE, INC., | : | Civil Action 06-2469 (KSH) |
|  | : | |
| Plaintiff | : | |
|  | : | |
| v. | : | |
|  | : | |
| EBAY, INC., et al., | : | OPINION |
|  | : | |
| Defendants | : | |
| _____ | : | |

SHWARTZ, Magistrate Judge

_____This matter having come before the Court as a result of objections to the Report of the Special Master dated April 21, 2008 and the motion to seal documents submitted in connection with the objections.  For the reasons set forth herein, the objections are overruled, the Report is adopted, and the motion to seal is denied.

## I. PROCEDURAL HISTORY

On June 1, 2006, plaintiff Net2Phone, Inc. ("Net2Phone" or "plaintiff") filed a Complaint against defendants eBay, Inc. ("eBay"), Skype, Inc., Skype Technologies SA ("Skype"), and John Does 1-10 (collectively "defendants") alleging patent infringement[1] and violations of 35 U.S.C. § 271.  See Compl. at ¶ 1.  Plaintiff filed its First Amended Complaint on June 7, 2006[2] and

_____

[1]  The initial Complaint alleged violation of US. Patent No. 6,108,704.  See Compl. at ¶ 14-22.

[2]  First Amended Complaint was re-filed on June 9, 2006.  See Docket Entry No. 3.

1

followed with its Second Amended Complaint on June 28, 2006 adding additional patents to the lawsuit ("patents-in-suit").[3]  Defendants filed an Answer and Counterclaim denying infringement, validity, and enforceability of the patents-in-suit on September 15, 2006, see Docket Entry No. 17, and plaintiff filed a Response to the Counterclaim on September 20, 2006. See Docket Entry No. 18.  Discovery has proceeded in accordance with various scheduling orders.

By way of letters dated November 14, 2007 and November 16, 2007, the parties advised the Court that plaintiff had designated over 1,000 documents as privileged or protected from disclosure under the work product rule and that defendant intended to challenge the majority of the plaintiff's designations.  See Order Appointing Special Master at 1.  After considering the parties submissions dated November 20, 2007, November 24, 2007, November 30, 2007, and December 3, 2007, the Court concluded that based on the volume of challenges and the likelihood that in camera inspection may be needed, the appointment of a Special Master under Fed. R. Civ. P. 53 to resolve the disputes was warranted.  See id. at 1-2. The parties concurred in this assessment and, by way of Order dated December 7, 2007, the Court appointed Ronald J. Hedges as Special Master ("Special Master"), Docket Entry No. 146, and, by agreement of the parties, the parties agreed to limit any review of his findings to one level of appeal.  Order Appointing Special Master at ¶ 7.

The Special Master conducted five days of hearings,[4] reviewed documents in camera, and

---

[3]  In the Second Amended Complaint added alleged violations of U.S. Patent Nos. 6,701,365, 6,009,469, 6,131,121 and 6,226,678.  See Second Am. Compl. at ¶¶ 23-62.

[4]  These hearings took place on January 10, January 15, February 6, February 7, and March 24, 2008.

heard arguments concerning "hundreds of documents" as to which Net2Phone asserted privilege. Findings of Fact and Conclusions of Law of Special Master ("Report") dated April 21, 2008 at 3. In addition to these hearings, the Special Master considered the submissions made pursuant to the Order of September 27, 2007, including defendants' submission dated November 14, 2007 and plaintiff's submission dated November 16, 2007. See id. At the January 10, 2008 hearing, the Special Master also gave the plaintiff an opportunity to submit additional evidence to support its privilege claims even though the original submission deadline had passed. See Report at ¶ 5. He advised that no further submissions would be allowed after January 15, 2008. See id. The plaintiff and defendants made additional submissions on April 8, 2008 and April 10, 2008 respectively, which the Special Master declined to consider because they were untimely. See id.

On April 21, 2008, the Special Master filed his report wherein he noted that plaintiff eventually produced 4,667 documents that it had previously withheld as privileged. Id. at 4. The Special Master also found other documents should be produced. Among other things, the Special Master concluded that, during an approximate one-year period, plaintiff and IDT "did not have any identity (or even similarity) of legal interests." Id. at 14. Accordingly, he found the "common interest" doctrine inapplicable to communications between the plaintiff and IDT and found that documents involving communications between plaintiff and IDT during the time period should be produced. Id. at 16.

The Special Master also concluded that the plaintiff and GE did not have the identical legal interest required for asserting the attorney-client privilege and their communications about a potential financing arrangement were not protected from disclosure. See id. at 22.

As to the valuation and infringement analyses, the plaintiff conceded that it voluntarily

disclosed patent analyses and valuations of the patents-in-suit.  Id. at 17.  Accordingly, the

Special Master concluded that the plaintiff waived the privilege over communications (other than

those with trial counsel) concerning the following subjects: "(1) whether Skype infringes the

NetSpeak patents; (2) whether the NetSpeak patents are easy to design around; (3) whether the

NetSpeak patents are valid; (4) whether Vonage infringes the NetSpeak patents; (5) whether the

PacketCable Specs require use of the NetSpeak patents; and (6) the value of the NetSpeak

patents."  Id. at 20.   The Special Master observed that while the parties may disagree as to

particular documents that fall within these subjects, such disagreement is "not yet ripe for judicial

review."  Id. at 21.

As to the disputes regarding privilege log entries 2623, 2629, 2632, 2633, 2634, 2645,

9062, 1861, 1864, 1870, 3814, 1870, 3814, 1142, 1332, 1333, 1337, 1840, 2783, 4562, 8832-33,

9061, 9073 and 4382, the Special Master concluded that the plaintiff failed to sustain its burden

to show that the communications are entitled to protection under the attorney-client privilege or

the work-product rule, or that any existing privilege has not been waived.[5]  Id. at 5-12.

On May 6, 2008, the plaintiff filed its Rule 53(f) Objections and Motion to Modify

Findings of Fact and Conclusions of Law of the Special Master.  See Docket Entry No. 224.

Defendant filed a Response in Opposition to Net2Phone's Objections to the Report of the Special

Master on May 21, 2008, see Docket Entry Nos. 232, 233, and plaintiff filed a reply on June 5,

2008.  See Docket Entry Nos. 238, 239.

The plaintiff also filed a motion to seal certain documents submitted in connection with

---

[5] The plaintiff did not appeal the Special Master's rulings regarding log entries 4638-39, 4675, 3893 and 1766.

its objections.  Plaintiff argues that good cause exists to seal the documents because they: (1) disclose a confidential arrangement between IDT and a third party to engage in joint patent enforcement, (2) disclose the name of a competitor against whom IDT was contemplating litigation, (3) contain confidential opinion of counsel on issues of patent infringement, (4) embody certain information that is designated for attorney's eyes only, and (5) contain the confidential agreement between Net2Phone and IDT.  The plaintiff asserts that the fact that the Special Master's findings have been posted on the docket does not preclude the plaintiff from seeking to seal the information.  In opposition, defendants argue that the plaintiff's motion to seal should be denied because: (1) the plaintiff's request is untimely, (2) none of the information it seeks to seal contains confidential information, and (3) the plaintiff has previously disclosed the information it now seeks to be sealed.

## II. DISCUSSION

### A. STANDARD OF REVIEW

The plaintiff argues that: (1) the Court must conduct a de novo review of the Special Master's findings of fact and conclusions of law, and (2) that the Court may review new evidence.

In response, the defendants argue that: (1) the Court should apply the "abuse of discretion" standard when reviewing the Special Master's procedural rulings regarding the discovery process, (2) the Court should show deference to the Special Master's findings on these matters, and (3) even if a de novo standard of review is appropriate, that standard does not permit plaintiff to present new arguments and evidence because allowing it to do so would undermine the purpose of the proceedings before the Special Master and would run counter to the interest of

"fair and timely resolution of the issues."

In reply, plaintiff argues that Skype misstates the standard of review because: (1) Fed. R. Civ. P. 53 states that a Special Master's findings of fact and conclusions of law are to be reviewed de novo, and (2) pursuant to Rule 53, the Court may consider new arguments, documents, and evidence as part of its de novo review.[6]

Under Federal Rules of Civil Procedure 53(a)(1)(C), the Court may appoint a Special Master to "address pretrial and posttrial matters." Fed. R. Civ. P. 53(a)(1)(C).  The Special Master must report his findings to the court that appointed him and serve a copy of his findings on each party.  Fed. R. Civ. P. 53(e).  The parties may appeal both the substantive and procedural findings of the Special Master. Fed. R. Civ. P. 53(f)(2); see, e.g., Commissariat A L'Energie Atomique v. Samsung Electronics Co., 245 F.R.D. 177, 179 (D.Del. 2007).

Here, the plaintiff appeals the Special Master's findings of fact, conclusions of law, and procedural decisions.  The Special Master made rulings concerning the application of the attorney-client privilege.  In this circuit, "the applicability of a privilege is a factual question" and "determining the scope of a privilege is a question of law."  In re Bevill, Bresler, & Schulman Asset Management. Corp., 805 F.2d 120, 124 (3d Cir. 1986) (citing U.S. v. Liebman, 742 F.2d 807, 809 (3d Cir. 1984)).  Objections to the Special Master's findings of fact and conclusions of law are reviewed de novo. Fed. R. Civ. P. 53(f)(3) and (4); see, e.g., Wachtel v. Guardian Life Ins. Co., Civ. Nos. 01-4183, 03.-1801, 2006 WL 1320031, at *3 (D.N.J. May 12, 2006); accord In re Intel Corp. Mircoprocessor Antitrust Litigation, Civ. No. 05-485, 2008 WL 2156751, at *1

---

[6] Plaintiff denies that they are attempting to raise new arguments, but points out that defendants are raising a whole new set of arguments related to preclusion.

(D.Del May 14, 2008).

In conducting a <u>de novo</u> review of the Special Master's finding of facts and conclusions of law, the Court is mindful that a

> [d]e novo review . . . does not necessarily mean a review that includes the submission of new evidence, particularly when evidentiary proceedings previously occurred before the Special Master. When a record on review "is sufficiently developed the district court may, *in its discretion,* merely conduct a <u>de novo</u> review" of the decision, making its own independent determination. Although <u>de novo</u> review refers to the review based on the record below plus any additional evidence received by the reviewing court, it also refers to review of the decision based only on the record below. The plain language of Rule 53 shows that the review of a Special Master's decision requires the court to make a <u>de novo</u> determination, not conduct a <u>de novo</u> hearing. Rule 53 is similar to 28 U.S.C. § 636(b)(1)(C), when a district court reviews the recommendations of a magistrate judge, the district judge "may accept, reject, or modify" the findings made by the magistrate and "may receive further evidence." Unlike a <u>de novo</u> hearing, "a <u>de novo determination</u> requires the district judge to 'consider the record which has been developed before the magistrate [judge] and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate [judge].'"

<u>Commissariat à l'Energie Atomique v. Samsung Electronics Co.</u>, 245 F.R.D. 177, 179 (D. Del. 2007).  "The phrase 'de novo determination' . . . means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy."  <u>United States v. Raddatz</u>, 447 U.S. 667, 690 (1980) (Stewart, J., dissenting)(citing <u>United States v. First City Nat'l Bank</u>, 386 U.S. 361, 368 (1967)).  This, however, does not require the reviewing court to hear new arguments.  In fact, courts generally "exclud[e] evidence of new arguments on objections . . . [because] [s]ystematic efficiencies would be frustrated and the [Special Master's] role reduced to a mere dress rehearser. . . . In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the [Special Master] . . . and – having received an unfavorable recommendation – shift gears before the [reviewing] judge."  <u>Dunkin' Donuts</u>

<u>Franchised Restaurants LLC v. Mehta</u>, Civ. No. 07-0423, 2007 WL 2688710, at *1-2 (W.D.Pa.
2007) (citing <u>Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840
F.2d 985, 991 (1st Cir. 1988)).[7]  For these reasons, in an appeal of a Special Master's decision,
the parties "cannot raise entirely new arguments for the first time on an objection to a Special
Master's Report."  <u>World Triathlon Corp. v. Dunbar</u>, 539 F.Supp.2d 1270, 1278 n. 13 (D.Hawaii
2008) (citing <u>Convolve, Inc. v. Compaq Computer Corp.</u>, Civ. No. 00-5141, 2004 WL 1944834,
at *1 (S.D.N.Y. Sept. 1, 2004)).

 With respect to considering additional evidence, the reviewing Court has the discretion to
consider additional facts or hear evidence itself if it is needed to make a <u>de</u> <u>novo</u> determination.
<u>See</u> <u>Raddatz</u>, 447 U.S. at 692.

 Challenges to the Special Master's rulings on procedural matters are only reviewed for an
abuse of discretion. Fed. R. Civ. P. 53(f)(5); <u>see</u>, <u>e.g.</u>, <u>Wachtel</u>, 2006 WL 1320031, at *3; <u>accord</u>
<u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190, 196-97 (3d Cir. 2000).  Among other
procedural rulings, the Special Master set deadlines for the presentation of submissions and
evidence and precluded evidence not timely submitted.

 i. <u>Special Master's refusal to consider untimely submissions</u>

 The plaintiff asks the Court to consider evidence that it failed to present by the deadline
that the Special Master had set for the presentation of new evidence.  In effect, the plaintiff is
asking the Court to overrule a procedural ruling of the Special Master.  Here, the Special Master

---

 [7] Generally, on appeal "[t]he matter of what questions may be taken up and resolved for
the first time on appeal is one left primarily to the discretion of the [reviewing court], to be
exercised on the facts of individual cases." <u>Singleton v. Wulf</u>, 428 U.S. 106, 121 (1976).
Appellate courts generally require exceptional circumstances in order to hear issues not presented
in the court below.  <u>Harris Corp. v. Ericsson, Inc.</u>, 417 F.3d 1241, 1266 (Fed. Cir. 2005)

permitted the parties to submit certifications in support of their respective positions by January 10, 2008.  The Special Master extended this deadline to January 15, 2008, Report at 5, and he notified the parties that he would not consider any submissions after this date.  Hr'g Tr. 119:22-120:8, Jan. 10, 2008; Hr'g Tr. 52:16-18, 136:10-20, Jan. 15, 2008.  Despite this warning, the plaintiff attempted to submit additional materials on April 8, 2008.  The Special Master's decision not to consider plaintiff's untimely submissions was not an abuse of his discretion. First, the plaintiff has not provided the Court with any reason why its submissions were so untimely.  Second, the plaintiff has not presented any evidence that it sought an extension of the deadline for submissions from the Special Master.  Third, the additional materials contain information that was in plaintiff's control before the deadline passed, namely evidence known to its witnesses about documents in existence years before the January 15 deadline.  Fourth, the record indicates that the plaintiff missed the Special Master's deadline to submit additional materials by approximately four months, not a few days.  It would be nearly impossible for the Special Master to conduct the privilege review and meet the Court imposed deadline to file a report if the parties did not comport with the deadlines for submissions.  As such, the Special Master's refusal to consider submissions that were presented more than four months past his deadline is not an abuse of discretion. Thus, the Court will not disturb any of his rulings based upon his decision not to consider the late filed materials.

Moreover, the Court declines to consider any factual materials not timely presented to the Special Master.  To allow this without any explanation as to why these materials were not timely presented would render the proceedings before the Special Master nothing more than a moot court exercise.  The appointment of a Special Master was made to expedite the resolution of

privilege disputes.  To this end, the Special Master set deadlines for submissions so he could have a complete record on which to render his rulings.  Like all evidentiary proceedings, at some point, the record must be closed.  Allowing unending augmentation would mean that the decision-maker would never have the complete record upon which to render a final decision and the adverse party would be deprived of an opportunity to confront the new evidence.  Here, the parties had ample opportunity to present evidence.  They were on notice of the deadline and the consequences of noncompliance.  Hr'g Tr. 52:16-20, Jan. 15, 2008.  There is no reason to allow further augmentation of the record with evidence clearly available to the plaintiff at the time the Special Master set the original January 15, 2008 deadline.  "[T]o do so in this situation," where there has been no explanation provided for the failure to comply, "would emasculate the purpose of the Special Master and Rule 53."  Commissariat, 245 F.R.D. at 180.

For these reasons, the Court declines to consider evidence not timely presented to the Special Master.

ii. Consideration of New Arguments

As to the assertion that the plaintiff has presented new arguments, the Court declines to parse the submissions that were presented to the Special Master and those that are presented to this Court to determine whether new cases are now being presented because all of the arguments raised to the Special Master and to this Court (with the exception of the need to find unfairness before requiring disclosure of documents embodying topics for which there has been a waiver) embrace the same legal theories concerning the applicability of the privilege, the common interest doctrine, and waiver.  To the extent additional cases are presented, the Court finds that there is no prejudice to any party if the Court considers these cases because each side has had an

10

opportunity to address them.  To the extent that the "unfairness" component of the waiver

analysis was not argued, consideration of this issue is required but it does not lead to conclusions

different from those the Special Master reached.  See Convolve, 2004 WL 1944834, at * 1.

 The Court turns to its de novo review of the Special Master's findings of fact and

conclusions of law.

 B.  Attorney Client Privilege

 As a preliminary matter, the Court notes that because jurisdiction is based upon the

presence of a federal question, the federal common law of privilege governs this matter.

See Fed. R. Evid. 501; Harding v. Dana Transport, Inc., 914 F. Supp 1084, 1090 (D.N.J.

1996)(citing Wm. T. Thompson Co. v. General Nutrition Corp., Inc., 671 F.2d 100, 103 (3d Cir.

1982)).

 The purpose of the attorney-client privilege is to encourage "full and frank

communication between attorney and their clients."  Upjohn Co. v. United States, 449 U.S. 383,

389 (1981); Westinghouse Electric Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423 (3d

Cir. 1991).  Because the attorney-client privilege obstructs the truth-finding process, however, it

is construed narrowly and "protects only those disclosures – necessary to obtain informed legal

advice – which might not have been made absent the privilege."  Westinghouse, 951 F.2d at

1423-24 (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)(emphasis in original));

Harding, 914 F. Supp at 1091 (stating "because the privilege obstructs the search for the truth

and because its benefits are, at best, indirect and speculative, it must be strictly confined within

the narrowest possible limits consistent with logic of its principle")(citations and internal

quotations omitted).

The Court of Appeals for the Third Circuit states the traditional elements of the attorney client privilege as follows:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made
>     (a) is a member of the bar of a court, or his or her subordinate, and
>     (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed
>     (a) by his client
>     (b) without the presence of strangers
>     (c) for the purpose of securing primarily either
>         (i) an opinion of law or
>         (ii) legal services or
>         (iii) assistance in some legal proceeding, and
>     (d) not for the purpose of committing a crime or tort; and
> (4) the privilege has been
>     (a) claimed and
>     (b) not waived by the client.

Montgomery County v. MicroVote Corp., 175 F.3d 296, 301 (3d Cir. 1999); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994).  A party asserting the privilege must show "(1) that it submitted confidential information to a lawyer, . . . (2) that it did so with the reasonable belief that the lawyer was acting as the parties' attorney," Montgomery Acad. v. Kohn, 50 F. Supp. 2d 344, 350 (D.N.J. 1999), and (3) the purpose of the communications was to secure legal, as opposed to business, advice.  In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997).  It is, therefore, "vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence."  In re Howard Indus., Inc., 67 B.R. 291, 293 (Bankr. D.N.J. 1986) (quoting In re Horowitz, 482 F.2d 72, 81-82 (2d Cir. 1973)); see Republic of Phillippines v. Westinghouse Elec. Corp., 132 F.R.D. 384, 388 (D.N.J. 1990) (stating "a litigant who wishes to assert confidentiality must maintain genuine confidentiality")(citations omitted and emphasis in original).  A party may waive the attorney-

12

client privilege through various actions including purposeful disclosure, partial disclosure, and careless disclosure. Edna Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 292-309 (American Bar Association 2001).  Under the doctrine of waiver, when "[c]onduct touches a certain point of disclosure, fairness requires that the privilege shall cease whether he intended that result or not."  8 Wigmore, Evidence § 2327 at 636 (1961).  Accordingly, a client generally waives the privilege if he or she voluntarily discloses the privileged communication to a third party,  Westinghouse, 951 F.2d at 1424; In re Diet Drugs Prods. Liab. Lit., MDL No. 1203, 2001 U.S. Dist. LEXIS 5494, at *13 (E.D. Pa. April 19, 2001), or fails to take reasonable measures to ensure the confidentiality of communications with counsel.  See Kaufman v. Sungard Invest. Sys., Civ. No. 05-1236, 2006 WL 1307882, at *3 (D.N.J. May 10, 2006); Smithkline Beecham Corp. v Apotex Corp., 232 F.R.D. 467, 479 (E.D. Pa. 2005)(stating that mass dissemination of purportedly confidential communications can destroy an assertion of the privilege).[8]

---

[8] Similarly, the work-product privilege precludes disclosure of "materials prepared by an attorney, or an attorney's agent, in anticipation of or for litigation," as well as "[a]n attorney's mental impressions, conclusions, opinions or legal theories."  In re Diet Drugs, 2001 U.S. Dist. LEXIS 5494, at *11 (citing In re Ford Motor Co. v. Kelly, 110 F.3d 954, 967 (3d Cir. 1997); see also U.S. v. Ernstoff, 183 F.R.D. 148, 153 (D.N.J. 1998); Fed. R. Civ. P. 26(b)(3)). The work product privilege may be waived and "[t]he predicate of the waiver inquiry in the work-product context . . . [is] whether the material was disclosed to an adversary." Maldonado v. New Jersey ex rel. Administrative Office of Courts-Probation Division, 225 F.R.D. 120, 131-32 (D.N.J. 2004).  "The essential question with respect to waiver of the work-product privilege by disclosure is whether the material has been kept away from adversaries."  Id. (citing Nicholas v. Wyndham Int'l, Inc., Civ. No. 01-147, 2003 WL 23198845, at *3-4, 2003 U.S. Dist. LEXIS 24086, at *9 (D.V.I. May 19, 2003)). "The party seeking to obtain protected work product bears the burden of proving that the protection has been waived."  Hatco Corp. v. W.R. Grace & Co.-Conn., Civ. No. 89-1031, 1991 WL 83126, at *7 (D.N.J. May 10, 1991).  A showing of disclosure to a third party does not result in a waiver of the work product protection if the parties have common interests. Id.

C. Common Interest Privilege

Here, defendants assert that plaintiff did not share the attorney-client privilege with either IDT or GE and therefore their communications with the plaintiff are not protected from disclosure.  Plaintiff argues that, at the time of the communications, it had a common interest with these third parties and their communications are privileged.  The "common interest privilege is an extension of the attorney-client privilege and work product doctrine," Block Drug Company, Inc. v. Sedona Laboratories, Inc., Civ. No. 06-350, 2007 U.S. Dist. LEXIS 29028, at *3 (D. Del. Apr. 19, 2007), and thus is "an exception to the general rule that the [] privilege is waived upon disclosure of privileged information to a third party." Katz v. AT&T Corp., 191 F.R.D. 433, 436 (E.D. Pa., 2000) (citing In re The Regents of the University of California, 101 F.3d 1386, 1390 (Fed. Cir. 1996)).

Under the common interest doctrine, "although an attorney actually represents only one party, there is no waiver of the attorney-client privilege by disclosure of privileged communications to third parties with a 'community of interest.'"[9] Pittston Co. v. Allianz Ins. Co., 143 F.R.D. 66, 69 (D.N.J. 1992).  Parties have a "community of interest" where they "have an identical legal interest with respect to the subject matter of a communication between an attorney and client concerning legal advice. . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." Id. (citing Duplan Corp.

---

[9] Remington Arms Co. v. Liberty Mutual Insurance Co., 142 F.R.D. 408, 418 (D. Del. 1992) (declining to apply the common interest doctrine because "the rationale which supports the common interest exception to the attorney-client privilege simply doesn't apply if the attorney never represented the party seeking the allegedly privileged materials."); see also Pittston Co., 143 F.R.D. at 70.

v. Deering Milliken Inc., 397 F. Supp. 1146, 1172 (S.D.S.C. 1974); In re The Regents of Univ. of Cal., 101 F.3d at 1390; In re Diet Drug, 2001 U.S. Dist. LEXIS 5494, at *14 (stating that the doctrine preserves a privilege where persons or companies "share a common legal interest in a legal issue or exchange privileged communications with one another").  For the doctrine to apply, the parties must have "an identical legal interest with respect to the subject matter of the communication . . . ."  Id.; Grider v. Keystone Health Plan Central, Inc., Civ. No. 05-MC-40, 2005 U.S. Dist. LEXIS 44069, at *21 (M.D. Pa. July 28, 2005).  Thus, under "the common interest doctrine . . .'parties with shared interest in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege.'"[10] Katz, 191 F.R.D. at 437 (quoting Thompson v. Glenmede Trust Co., Civ. No. 92-5233, 1995 U.S. Dist. LEXIS 18780, at *15 (E.D. Pa. Dec. 18, 1995)); see also Hewlett-Packard Co. v. Bausch & Lomb, Inc., 115 F.R.D. 308, 309-10 (N.D. Cal. 1987)(applying the doctrine where the communication is in anticipation of a joint litigation).  The doctrine, however, does not apply where the third party's interest "'does not appear to be that of a potential co-defendant in a possible . . . action' . . . but rather [is] that of an 'adverse [party], negotiating at arm's length a business transaction between themselves.'" Nidec Corp. v. Victor Comp. Of Japan, Civ. No. 05-0686, 2007 U.S. Dist. LEXIS 48841, at *13-14 (N.D. Cal. July 3, 2007)(quoting SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 512-13 (D. Conn. 1976)).  In short, to assert the common interest doctrine, plaintiff must show: (1) the material is privileged, Grider, 2005 U.S. Dist. LEXIS

---

[10]  Of course, "[e]ven if there were a common legal interest, the common interest exception requires that the communication at issue be 'designed to further that [legal] effort.'" Nidec Corp. v. Victor Comp. Of Japan, Civ. No. 05-0686, 2007 U.S. Dist. LEXIS 48841, at *15 (N.D. Cal. July 3, 2007)(quoting United States v. Bergonzi, 216 F.R.D. 487, 295 (N.D. Cal. 2003) (alteration and emphasis in original)).

44069, at *20 (stating that "[t]he common interest privilege 'does not create an independent privilege, but depends upon a proper showing of the other elements of'. . . [a] recognized privilege before it will apply"), (2) "the parties had an identical legal and not solely commercial interest," In re The Regents of Univ. of Cal., 101 F.3d at 1390; Katz, 191 F.R.D. at 438, and (3) the communication was designed to further the shared legal interest. Nidec Corp., 2007 U.S. Dist. LEXIS 48841, at *10-11. Here, the Court will assume, without deciding, the first prong is met and the materials plaintiff seeks to withhold would be privileged if disclosed between an attorney and a client. As such, the Court turns to consider whether or not the remaining two prongs are met.

I.  Communications between Net2Phone and IDT

Plaintiff argues that the common interest privilege protects communications between plaintiff and IDT because: (1) plaintiff and IDT were closely affiliated companies with identical legal interests in preserving plaintiff's intellectual property, (2) the limited adversity between plaintiff and IDT as to a tender offer did not waive privilege on all issues, and (3) the common interest privilege between plaintiff and IDT arose separately from the IP Agreement.

The defendants argue that the common interest privilege does not apply to IDT and plaintiff between April 4, 2005 and March 13, 2006 because: (1) plaintiff and IDT were separate, publicly-traded corporations, (2) they did not share a common interest because their communications were not between a parent corporation and its wholly-owned subsidiary, (3) IDT did not then have any interest in the patents-in-suit, (4) the lack of adversity between the two corporations on certain topics does not necessarily imply they shared identical legal interests in those areas, (5) there is no evidence that either party to the communications considered the

16

relationship between them to be that of attorney-client, (6) after the termination of the Intellectual

Property Legal Services Agreement and before the acquisition, there was no existing legal

relationship between the plaintiff and IDT that would permit application of the common interest

privilege as reflected by plaintiff's use of its own counsel to enforce its patent portfolio, instead

of IDT's attorneys, (7) IDT and plaintiff never entered into an agreement or placed any

confidentiality restrictions on each other, (8) the information was disclosed for commercial

purposes, and not to form a joint defense, and (9) the plaintiff has failed to show that joint legal

activity between plaintiff and IDT was likely.

      Here, a de novo review shows that the Special Master's conclusion that the

communications between plaintiff and IDT between the dates April 4, 2005 and March 12, 2006

are not subject to the common interest privilege doctrine is correct.  First, there was no common

legal interest between plaintiff and IDT during the dates of April 4, 2005 and March 12, 2006.

See Stott-Bumsted Dec. Ex. 5 ("S.E.C. Schedule 14D-9") at 28-35.[11]  April 4, 2005 is the date

plaintiff's termination of its contractual relationship with IDT became effective.  Id. at 28.

March 13, 2006 is the date that IDT's acquisition of Net2Phone became effective.  Thus, from

April 4, 2005 to March 13, 2006, the parties were and functioned as separate, publically traded

companies.  See id. at 28-35.  Indeed, after April 4, 2005, the independent committee of plaintiff

affirmed that it was "not aware of any other arrangement that gave IDT any interest in the

Netspeak patents, other than as an indirect interest as a shareholder of Net2Phone.  Accordingly,

---

[11] Exhibit 5 is a Schedule 14D-9 Solicitation/Recommendation Statement filed by IDT
with the Securities and Exchange Commission detailing to its shareholders the tender offer for
the outstanding Net2Phone shares.

we understand that no agreement exists between IDT and Net2Phone that gives IDT an interest in the Netspeak patents." Id. at 29. Second, from April 4, 2005 to March 13, 2006, IDT and Net2Phone had adverse interests because IDT and Net2Phone were negotiating the price IDT would pay for Net2Phone's shares. See id. Indeed, the plaintiff concedes that IDT was adverse to Net2Phone, but argues that it was only on the issue of the price IDT would pay for Net2Phone shares. The fact that the parties were adverse in the price per share for Net2Phone illustrates that the parties were indeed separate entities negotiating at arms length in a commercial transaction. Corning, Inc. v. SRU Biosystems, LLC, 223 F.R.D. 189, 190 (D.Del. 2004); SCM Corp., 70 F.R.D. at 525, Nidec Corp., 2007 U.S. Dist. LEXIS 48841, at *13-14 (citing cases); see also Katz, 191 F.R.D. at 438 (no common interest between parties before reaching licensing agreement because such negotiations do show an identity of legal interests). Third, the relationship between plaintiff and IDT was that of a corporation and its controlling shareholder. Simply because in-house counsel enforced the corporation's patents, which would benefit its shareholders, does not mean that they shared a legal interest. Put differently, a legal interest cannot arise simply because a company acts in a way that advances the economic interests of its majority shareholder. A logical extension of plaintiff's argument would expand the application of the common interest doctrine to cover all business transactions where a company acted in the interest of its majority shareholder. While shareholders and the corporation may share an interest in commercial success, this shared economic interest is not a legal interest. Moreover, IDT's direct contractual interest in the plaintiff's patents ended when the intellectual property agreement ended. In short, during this period, these legally separate entities had no mutual obligation and were engaging in negotiations to change their commercial relationship and they

18

then shared no common legal interest.   Their separate interests on legal issues is demonstrated

by the representations to the SEC that plaintiff retained counsel for services that IDT had

formerly provided.  S.E.C. Schedule 14D at 13, 28-29.  Finally, there is no indication that the

communications associated with the tender offer were disclosed to further a common legal

strategy or joint interest in pending or anticipated litigation.  Rather, the information was shared

to further a commercial transaction between legally separate entities.  Nidec Corp., 2007 U.S.

Dist. LEXIS 48841, at *15-16.

The cases plaintiff embraces do not change this result.  Plaintiff's reliance on In re

Teleglobe Communications Corp., 493 F.3d 345 (3d Cir. 2007), for the proposition that parent

and subsidiary corporations are joint clients and thus afforded the common interest privilege is

unpersuasive because: (1) the Teleglobe court applied Delaware state law, rather than Federal

common law; and (2) the communications in Teleglobe were between parent-subsidiary and not

between the corporation and its majority shareholder.  For these reasons, Teleglobe does not

change the analysis.

In addition, Hewlett-Packard Co., 115 F.R.D. at 310, does not advance the plaintiff's

position as the facts in Hewlett-Packard Co. are distinguishable.  In finding a common interest

privilege between two parties, the court in Hewlett-Packard Co. observed that the defendant and

its prospective business partner shared information pursuant to a confidentiality agreement.

Moreover, the court observed that each faced litigation from the same plaintiff, and "[i]n such a

lawsuit[,] defendant would be defending its marketing of the product in the years preceding the

sale and GEC would be defending its marketing of exactly the same product in the years

following the sale. Thus, at the time defendant and GEC were negotiating it seemed quite likely

19

that defendant and GEC would be sued by plaintiff and that in that litigation defendant and GEC would be identically aligned, fighting to protect interests distinguished only by the time frame in which the marketing took place." Id. For these reasons, the court opined that the defendant and GEC would likely pursue a joint defense in defending the patent claims. Id. Here, there is nothing to show that plaintiff and IDT shared information under a confidentiality agreement nor is there evidence that at the time of the communication IDT and plaintiff faced the prospect of imminent litigation or a common adversary.

For these reasons, and on a de novo review, the Court finds that IDT and Net2Phone did not have a common legal interest during the period April 4, 2005 through March 13, 2006 and the Special Master's conclusions are adopted.

II. Communications between Net2Phone and GE

At some point during 2005, IDT and GE contemplated partnering to enforce IDT's patent portfolio through litigation or licensing. See Stott-Bumsted Dec. Ex. 17 (Email from James DiGiorgio, senior counsel to IDT, to David Greenblatt and "Ldiaz"). The transaction was to be structured as a loan from GE to IDT in the amount of a hundred million dollars. Id. The loan was to be repaid from the proceeds of the licencing/enforcement of the NetSpeak patent portfolio. Id. Any licencing/enforcement revenue above a hundred million dollars would be shared by GE and IDT on a pre-defined basis. Id.

The plaintiff argues that the communications between IDT and GE about joint enforcement of the NetSpeak patents are subject to the common interest privilege because the contemplated relationship between GE and IDT was not limited to a commercial transaction but

rather involved both parties having an identical legal interest in the enforcement of the patents at issue. Finally, plaintiff argues that the fact that GE and IDT did not consummate their negotiations is irrelevant because the appropriate standard is whether or not the parties contemplated joint legal action, which GE and IDT did. Plaintiff also points out that the parties intended to keep their communications confidential, which is a hallmark of the attorney-client privilege.

The defendant argues that the common interest privilege does not apply to the IDT-GE communications because: (1) the parties did not have a common legal interest, (2) the agreement contemplated between the parties did not move past the negotiation stage, (3) the parties did not execute a confidentiality agreement, and (4) the cases the plaintiff relies on are distinguishable.

Here, it is undisputed that IDT and GE had discussed an agreement where GE proposed to partner with IDT to enforce the patents through litigation or licensing. Id. This proposed business arrangement was to be configured as a loan, in which GE would lend IDT money which would be re-paid with the proceeds from any fruitful litigation or licensing agreements. Id. The interest here was commercial not legal. First, the arrangement between the parties was a proposed financing arrangement between independent entities. At the time of the negotiations, their interest was commercial and their communications during the negotiations were to further that interest and not a legal position. Second, at the time of the negotiations, GE was not a licensee, potential licensee, or owner of the patent. Third, although GE maintained the information received and shared with IDT in confidence, Stott-Bumsted Dec. Ex. 18 at ¶ 5, the plaintiff has failed to show that there was a strict confidentiality agreement to do so or that their negotiations were conducted to advance a legal rather than a commercial interest.

21

Moreover, and as discussed above, <u>Hewlett-Packard Co.</u>, 115 F.R.D. at 310, does not advance the plaintiff's position.  Here, plaintiff and GE did not face the prospect of imminent litigation.  There was neither a threat of impending legal action against them nor was there a common adversary.  Rather, GE and plaintiff were negotiating a business transaction whereby GE would loan plaintiff money that would be repaid through patent enforcement actions or licensing of patents.  Had the agreement come to pass, then communications to further the enforcement activity may have been protectable but the purpose of the communications during the negotiations were to entice a third-party to loan plaintiff money and not to further a then-shared legal interest.  For these reasons, the common interest doctrine does not cover the communications between plaintiff and GE and the conclusions of the Special Master are adopted.

Having determined that communications between IDT and plaintiff during the period April 4, 2006 and March 13, 2006 and the communications between plaintiff and GE are not privileged, the documents reflecting these communications must be disclosed.

III. <u>Waiver</u>

The Court next considers whether or not disclosure to these entities and disclosures to plaintiff's shareholders waives the privilege asserted over communications concerning the same topics.  Generally, privileged material disclosed to a third party waives the privilege. <u>Westinghouse Electric Corp.</u>, 951 F.2d at 1425; <u>Bulow v. Bulow</u>, 828 F.2d 94, 103 (2d Cir. 1987).  The Third Circuit has identified two distinct forms of "limited" waiver: selective waiver and partial waiver.  <u>Westinghouse</u>, 951 F.2d at 1423 n.7.  Selective waiver "permits the client who has disclosed privileged communications to one party to continue asserting the privilege against other parties" whereas partial waiver "permits a client who has disclosed a portion of

privileged communications to continue asserting the privilege as to the remaining portions of the same communications." Id. (citations omitted). While fairness is not a consideration in selective waiver cases, it is a "central element" of a court's determination where partial waiver is invoked. Harding, 914 F.Supp at 1092; see also Westinghouse, 951 F.2d at 1426 (stating that "[g]enerally, the 'fairness doctrine' is invoked in partial (as opposed to selective) disclosure cases"). With a partial waiver, "the privilege is waived only as to the communication actually disclosed unless a partial waiver would be unfair to the party's adversary." Westinghouse, 951 F.2d at 1426 n.13; Wachtel, 2006 WL 1286188, at *1 n. 2; In re Intel Corp., 2008 WL 2310288, at *10; In re Linerboard Antitrust Litigation, 237 F.R.D. 373, 388 (D.Pa. 2006). The fairness component seeks to "prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege holder's selective disclosures . . . of otherwise privileged information." In re Intel Corp., 2008 WL 2310288, at *10 (citations omitted). A waiver can occur when a party attempts to use the communication in a litigation or where the party "makes factual assertions, the truth of which can only be assessed by examination of the privileged communications." Id. at 11. As the Intel court observed concerning disclosure of a report about document production, by disclosing summaries of a report, it "placed the accuracy and validity of the information contained in these summaries at issue." Id. at 12. The Intel court reasoned that to conclude otherwise would enable Intel to assert facts as a sword and shield the adversary from challenging the accuracy of the assertions.

The plaintiff objects to the Special Master's conclusion that it waived privilege on the subjects of whether: (1) Skype infringes the NetSpeak patents, (2) NetSpeak patents are easy to design around, (3) NetSpeak patents are valid, (4) Vonage infringes the NetSpeak patents, (5)

PacketCable Specs require the use of the NetSpeak patents, and (6) the value of the NetSpeak patents. The plaintiff argues that: (1) disclosure of a few communications between the parties should not result in subject matter waiver in the aforementioned topics; (2) according to the Court of Appeals for the Third Circuit, privilege is waived only as to those communications actually disclosed unless a partial waiver would be unfair to the party's adversary, and there has been no showing of unfairness nor prejudice here, (3) the plaintiff is willing to alleviate any fear of future prejudice to the defendants by agreeing not to "affirmatively rely on any of the partial disclosures at issue at any future stage in litigation," Pl. Reply Br. at 8, and (4) the subject matter waiver defendants demand would unfairly prejudice the plaintiff in other litigations because the scope of the Special Master's conclusions were not necessarily limited to the patents at issue in the present litigation.

The defendants argue that the Special Master correctly interpreted the scope of the subject matter waiver regarding the analyses and valuations of patents-in-suit.  The defendants assert that: (1) they need not show prejudice under Third Circuit law and, in any event, defendants have been prejudiced by the plaintiff's withholding of documents because the plaintiff has selectively disclosed documents to support its argument while withholding others on the same subject that may contradict its position, (2) the Special Master correctly imposed the appropriate limitation on the subject matter waiver when he determined that the waiver covers all documents except communications with trial counsel, and (3) that the plaintiff's complaint regarding temporal limitations to the waiver should be rejected because it is untimely.

A de novo review of the scope of the waivers that resulted from disclosures of the Monetization Plan, summaries of the CRA Report, and opinions of Douglas Derwin

24

demonstrates that the Special Master's conclusions are correct.

### 1. Monetization Plan and CRA Report[12]

According to the plaintiff, IDT's and plaintiff's attorneys prepared and presented a Monetization Plan to shareholders, which discussed, among other things, the implementation of a licensing and patent sale strategy.  The plan was also used during the tender offer negotiation to provide information about the value of the patents.  During the tender offer negotiations, plaintiff's counsel also obtained a report from CRA International concerning the value of the patents.  The report's conclusion was disclosed to the shareholders because the valuation was material to their decision about tendering their shares but the analysis was not disclosed.

A de novo review shows that the plaintiff waived its assertion of privilege concerning valuation.  The plaintiff affirmatively disclosed valuation information when it advanced its interest.  As to the Monetization Plan, it was publicly disclosed in IDT's 14-D9 Securities and Exchange filing in connection with its tender offer.  S.E.C. Schedule 14D-9 at 28.  Similarly, the conclusions in the CRA Report were disclosed to shareholders and referred to in IDT's 14-D9 Securities and Exchanged filing.  Id. at 31, 44-45.  There is no dispute that the topic of valuation was widely disseminated.  Thus, at a minimum, the plaintiff engaged in a selective waiver when it disclosed the Monetization Report and the conclusions in the CRA report to its shareholders and others with an interest in the tender offer.  Fairness is not a consideration in selective waiver cases, and thus the Special Master was correct in declining to undertake a fairness analysis.

Moreover, there is at least a partial waiver as it relates to the CRA report.  Plaintiff

---

[12] Attached as Exhibit A to the Declaration of Hannah Stott-Bumsted, dated May 5, 2008.

disclosed the conclusions but not the analysis or reasoning for the conclusions.  If viewed as a partial waiver, the Court must consider whether or not it would be unfair to the defendant to allow the plaintiff to withhold the remainder of the report.  The Court finds that it would be unfair to allow the plaintiff to withhold the analysis portion of the report.

First, the plaintiff seeks to rely on valuation to make arguments concerning damages.  Even if the Monetization Plan or CRA Report are not offered affirmatively in evidence, plaintiff embraced them in the context of a commercial event and defendants should have an opportunity to investigate the bases for valuations contained in these documents and challenge the plaintiff's present valuation position with them.  It would be unfair to allow plaintiff's to take one position in one context to advance its commercial purposes and preclude defendants from seeing if it took a different position in litigation. The defendants should be able to impeach plaintiff with its own statements or those it embraced on this topic.  See V. Mane Fils S.A. v. Int'l Flavors and Fragrances, Civ. No. 06-2304, 2008 WL 619207, at *3 (D.N.J. March, 4, 2008).  Second, the plaintiff's representation that they do not intend to use these documents is insufficient.  Plaintiff has not abandoned a desire to offer evidence about the value of its patents and thus the subject to which the documents relate is still present in this case and should be documents that defendants can examine.  For all of these reasons, the Special Master's subject-matter waiver finding regarding valuation is correct.

### 2. Patent Opinions

IDT and plaintiff disclosed patent opinions outside the attorney-client relationship.  According to the plaintiff, IDT retained Doug Derwin to evaluate a lawsuit against Vonage for infringement of the NetSpeak patents.  In an October 2005 email, Doug Derwin disclosed his

analysis to third parties about whether or not certain products infringe on plaintiff's patents,  see Stott-Bumsted Dec. Ex. 4 at 1-2 (Email from Ely D. Tendler, Chief Legal Officer for IDT, to Doug Derwin and Abbe L. Dienstag) and provided an opinion that NetSpeak patents are easy to design around. Id. at 2.  Derwin's views were then discussed by various third parties at a meeting in October 2005 consisting of legal counsel, consultants and technical personnel for both plaintiff and IDT at a time when plaintiff and IDT had no legal relationship beyond IDT's ownership of some of plaintiff's shares and at a time they had no shared legal interests.  S.E.C. Schedule 14D at 31.  Patent opinions were also embodied in the Monetization Plan.  Specifically, the Monetization Plan included information pertaining to whether the NetSpeak patents are valid and whether the PacketCable Specs require use of the NetSpeak patents.  S.E.C. Schedule 14D at 29. Plaintiff contends these disclosures were made to "an affiliate" in the context of a tender offer and the disclosure does not waive the privilege over other communications on the same subject and the Special Master's order directing disclosure was wrong because there was no finding of prejudice from nondisclosure of other communications on this subject.

When Mr. Derwin made his disclosures, the plaintiff and IDT did not share a common interest.  Moreover, Mr. Derwin was acting only on behalf of IDT when he made his disclosures. Thus, by announcing his patent infringement opinions beyond IDT, the privilege has been waived on these subjects.  Similarly, the Monetization Plan, which includes comments about the Net2Speak patents, was widely disseminated.  Allowing plaintiff to withhold other communications on this subject would be unfair to the defendants.  Defendants should be able to counter plaintiff's attempts to undermine Mr. Derwin's opinion and be confronted with their own views as announced in the Monetization Plan, particularly if the plaintiff attempts to distance

itself from these opinions in this litigation about patents involving a similar technology.

Based upon these disclosures and the prejudice to the defendants by limiting the disclosure to the actual communication plaintiff conveyed to IDT and plaintiff's shareholders, and upon consideration of the subjects implicated by these disclosures, the Court finds that the Special Master correctly found that the plaintiff waived the privilege to the following topics: (1) whether Skype infringes the NetSpeak patents; (2) whether the NetSpeak patents are easy to design around; (3) whether the NetSpeak patents are valid; (4) whether Vonage infringes the NetSpeak patents; (5) whether the PacketCable Specs require use of the NetSpeak patents; and (6) the value of the NetSpeak patents. The absence of temporal limits to the scope of the waiver is consistent with the fact that certain of the disclosures do not have temporal limits. The Court notes that the Special Master imposed a temporal limitation on communication between IDT and the plaintiff and this reflects he was mindful of the applicability of such limits when appropriate.

For all of these reasons, the Court overrules that plaintiff's privilege assertion over responsive documents embodying: (1) communications between plaintiff and IDT during the period April 4, 2005 through March 16, 2006; (2) communications between plaintiff and GE; and (3) communications (except those with trial counsel) falling within the following categories: (a) whether Skype infringes the NetSpeak patents; (b) whether the NetSpeak patents are easy to design around; (c) whether the NetSpeak patents are valid; (d) whether Vonage infringes the NetSpeak patents; (e) whether the PacketCable Specs require use of the NetSpeak patents; and (f) the value of the NetSpeak patents. The plaintiff shall produce the withheld documents no later than June 30, 2008.

      D. <u>Specific Documents</u>

_____The plaintiff also objects to the Special Master's privilege rulings concerning specific documents.  The plaintiff bears the burden to prove that any document that does not appear privileged on its face is in fact privileged material.  To this end, it must present evidence about the identity of the author of the document and the reason for its creation.  For the reasons set forth herein, plaintiff has not met its burden.

i. <u>Entry 2623 (Exhibit D)</u>[13]

The Special Master concluded that the handwriting on log entry 2623 is not subject to privilege.  Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could neither identify the author of the writing nor its purpose, the substance of the writing indicates that it contains legal impressions.  The plaintiff asserts that the two sentences handwritten at the top of the first page reflects a legal comparison of the subject matter of the underlying document with another patent.  The defendants argue that the Special Master reviewed the handwritten notes and did not err when he concluded that the privilege did not apply to the handwriting on entry 2623 because plaintiff failed to sustain its burden of proof and was correct in refusing to consider the Declaration of Joseph John, a senior technical director at during the relevant period, because it was submitted more than two months after the deadline.

The privilege log describes the document as embodying work product[14] and lists

_____

[13] The Exhibits are attached to the Declaration of Hannah Stott-Bumsted, dated May 5, 2008.

[14] Rule 26 (b)(3) of the Federal Rules of Civil Procedure provides, in relevant part:
    (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

> indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those
> materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to
> prepare its case and cannot, without undue hardship, obtain their
> substantial equivalent by other means.
> (B) Protection Against Disclosure. If the court orders discovery of
> those materials, it must protect against disclosure of the mental
> impressions, conclusions, opinions, or legal theories of a party's
> attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).  Rule 26(b)(3) essentially establishes "two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery.'" In re Cendent Corp., 343 F.3d 658, 663 (3d Cir. 2003) (quoting United States v. Nobles, 422 U.S. 225, 238-239 (1975)). As discussed by District Judge Stanley Chessler in In re Gabapentin Patent Litigation, 214 F.R.D. 178 (D.N.J. 2003),

> Courts generally, and in this Circuit in particular, have applied what
> amounts to a two part test for ascertaining whether the documents (or
> things) at issue should be protected under the . . . work product
> privilege.   The first prong of the inquiry is the "reasonable
> anticipation" test, which requires that the court determine at what
> point in time litigation could reasonably have been anticipated.
> Whether a particular document was prepared in "anticipation of
> litigation" is . . . . incapable of precise definition.  In general, though,
> a party must show more than a remote prospect, an inchoate
> possibility, or a likely chance of litigation.  Rather, a party must show
> that there existed an identifiable specific claim of impending
> litigation when the materials were prepared.  The mere involvement
> of, . . . or investigation by an attorney does not, in itself, evidence the
> "anticipation of litigation."  Neither will the mere fact that litigation
> actually occurred establish that the documents prepared before the
> litigation were created in anticipation thereof.
>
> This Circuit has imposed an additional requirement beyond that
> embodied in the reasonable anticipation test.  Thus, the second prong
> of the test is whether the material [was] produced because of the
> litigation and for no other purpose.  In order to determine whether a
> document satisfies this standard, the proper inquiry is whether in light

the author as Oblon Spivek.  The plaintiff concedes, however, that it does not know the identity

of the author of the handwriting.  Pl. Br. at 24-25.  Moreover, its effort to prove the identity

circumstantially through the Declaration of Joseph John dated March 13, 2008 fails because it

was submitted approximately two months after the Special Master's January 15, 2008 deadline.

Stott-Bumsted Dec. Ex. 19 ("Joseph John's Dec.").  Because it was not timely submitted, the

Court will not consider it.  Moreover, the record silent as to whether or not the document was

prepared in anticipation of litigation and for no other purpose, which is critical to sustaining the

assertion of work product.  Without the identity of the author and the purpose for which the

writings were made, the plaintiff cannot establish that the writings on these documents are

privileged or protected by the work product rule.

ii.  Entry 2629 (Exhibit E)

    The Special Master concluded that the handwriting on log entry 2629 is not subject to

privilege.  Plaintiff states that the Special Master erred in this ruling because, although the

---

of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.  Documents created for other purposes that prove useful in subsequent litigation are not . . . work product; similarly, documents that are routinely prepared in the ordinary course of business are outside the scope of work product protection.  Even where reasonable anticipation of litigation is established, whether the document comes within the purview of work product privilege still depends primarily on the reason or purpose for the document's production.  Finally, the articulable claim likely to lead to litigation must pertain to this particular party, not the world in general.

In re Gabapentin Patent Litigation, 214 F.R.D. at 183-184 (citations and quotations omitted)(emphasis added).

plaintiff could neither identify the author of the writing nor the purpose of it, the substance of the writing indicates that it contains legal conclusions about priority date.  The defendants argue that the Special Master reviewed the handwriting and did not err when he concluded that the privilege did not apply to the handwritten entries on 2629 because plaintiff failed to sustain its burden of proof and Mr. John's Declaration is untimely and insufficient.

According to the log, plaintiff has asserted that the handwriting is protected by the attorney-client privilege.  Although the log states the author is "Joe John," no timely submitted evidence establishes the identity of the author of the handwriting.  Without proof of the identity of the author and the purpose for which the writings were made, the plaintiff cannot establish that the handwriting is privileged.

### iii.  Entry 2632 (Exhibit F)

The Special Master concluded that the handwriting on log entry 2632 is not subject to privilege.  Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could neither identify the author of the writing nor its purpose, the substance of the writing indicates that it contains legal conclusions about prior art.  The defendants argue that the Special Master reviewed the handwriting and did not err when he concluded that the privilege did not apply to the handwritten entries on 2632 because plaintiff failed to sustain its burden of proof and Mr. John's Declaration is untimely and insufficient.

According to the log, plaintiff asserts that the handwriting on the document is privileged and protected work product.  The timely presented record, however, does not reflect that the notes were made in anticipation of litigation nor does it establish the author of the handwriting.

Moreover, although the log identifies Mr. Spivek as the author, the plaintiff concedes that it does not know the identity of the author for handwriting on entry 2632.  See id.  Without the identity of the author and the purpose for which the writings were made, the plaintiff cannot establish that the writing on the documents are privileged or protected work product.

### iv.  Entry 2633 (Exhibit G)

The Special Master concluded that the handwriting on log entry 2633 is not subject to privilege.  Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could not identify the author of the writing nor its purpose, the substance of the writing indicates that it contains legal conclusions about the patent's priority date.  The defendants argue that the Special Master reviewed the handwriting and did not err when he concluded that the privilege did not apply to the handwritten entries on 2633 because plaintiff failed to meet its burden of proof and Mr. John's Declaration is untimely and insufficient.

 According to the log, plaintiff asserts that the document contains handwriting protected by the attorney-client privilege and work product rule.  Although the log identifies Mr. Spivek as the author, plaintiff concedes that it does not know the identity of the author for writings on entry 2633.  See id.  Moreover, the record is silent as to whether the notations were made in anticipation of litigation.  Without the identity of the author and the purpose for which the writings were made, the plaintiff cannot establish that the writings on these documents are privileged or protected by the work product rule.

### v.  Entry 2634 (Exhibit H)

The Special Master concluded that the handwriting on log entry 2634 is not subject to

privilege.  Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could neither identify the author of the writing nor its purpose, the substance of the writing indicates that it contains legal conclusions about prior art.  The defendants argue that the Special Master reviewed the handwriting and did not err when he concluded that the privilege did not apply to the handwritten entries on 2634 because plaintiff failed to sustain its burden of proof and Mr. John's Declaration is untimely and insufficient.

According to the log, plaintiff asserts that the handwriting on the document is protected by the attorney-client privilege and work product rule.  Although Mr. Spivek is listed on the log as the author, plaintiff concedes that it does not know the identity of the author for writings on entry 2634.  See id.  Moreover, the record is silent as to whether the notations were made in anticipation of litigation and for no other purpose.  Without the identity of the author and the purpose for which the writings were created, the plaintiff cannot establish that the writings on these documents are privileged or protected by the work product rule.

vi.  Entry 2645 (Exhibit I)

The Special Master concluded that the handwriting on log entry 2645 is not privileged. Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could neither identify the author of the writing nor its purpose, the substance of the writing indicates that it contains legal conclusions that compare the patent's claim to certain technology.  The defendants argue that the Special Master reviewed the handwriting and did not err when he concluded that the privilege did not apply to the handwritten entries on 2645 because the plaintiff failed to carry its burden of proof and Mr. John's Declaration is untimely and insufficient.

According to the log, plaintiff asserts that the document is protected by the attorney-client privilege.  The record, however, does not establish the identity of the author and the log merely asserts that the author is in-house counsel.  Plaintiff concedes that it does not know the identity of the author, see id., and without the identity of the author and the purpose for which the writings were made, the plaintiff cannot establish that the writings on these documents are privileged.  Moreover, the writing embodies a series of questions about a product and does not appear privileged on its face.  Thus, the plaintiff has failed to meet is burden to sustain the privilege.

vii.  Entry 9062 (Exhibit J)

The Special Master concluded that the writings on log entry 9062 are not privileged.  Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could neither identify the author of the writing nor its purpose, the substance of the writing indicates that it contains legal conclusions. The defendants argue that the Special Master reviewed the handwriting and did not err when he concluded that the privilege did not apply to the handwritten entries on 9062 and properly declined to consider Mr. John's Declaration as it was untimely and insufficient.

According to the log, plaintiff asserts that the document constitutes work product prepared in anticipation of litigation.  The record, however, does not show that it was created for this purpose nor does it establish the author of the handwritten notations.  Although the log identifies Michael Casey as the author of the document, the plaintiff concedes that it does not know the identity of the author for handwriting on entry 9062.  See Pl. Br. at 24-25.  Moreover, entry 9062 does not include handwritten words but rather embodies underlines of words in the text of a published patent.  Without the identity of the author and the purpose for which the lines

were made, the plaintiff cannot establish that the writings on these documents are privileged.

viii.  Entry 1861 (Exhibit K)

The Special Master concluded that log entry 1861 is an undated document without an identified author and nothing on its face shows that it is privileged.  Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could neither identify the author of the writing nor its purpose, there is information within the document that suggests that it was drafted by one of IDT's in-house lawyers and the substance indicates that the document contains legal advice "on the most likely terms of a" sales transaction.   The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 1861 because plaintiff failed to produce evidence to support its claims that the document is privileged.

According to the log, entry 1861 is an undated outline that plaintiff asserts embodies work product and privileged communications with Jim DiGorgio about a VOIP patent.  In 2005, Mr. DiGiorgio was senior counsel for IDT.   Nonetheless, there is no showing that the outline was prepared in anticipation of litigation, no showing that when it was shared with Net2Phone that the plaintiff and IDT had a shared legal interest, and no showing it was authored by an attorney. In fact, according to the log, the author is listed as "NetSpeak Corp." and the plaintiff has conceded that it does not know the identity of the author.  See id. at 25.  Moreover, the section titled "most likely" does not contain any legal analysis but rather it contains terms of a financial agreement that may be reached.  Without the identity of the author and the purpose for which the document was created, the plaintiff cannot establish that the document is privileged.

36

ix.  Entry 1864 (Exhibit L)

The Special Master concluded that log entry 1864 is an undated document without an identified author that does not embody privileged communications.  Plaintiff states that the Special Master erred in this ruling because, although the plaintiff could neither identify the author of the writing nor its purpose, the substance of the writing indicates that it was prepared by a member of IDT's in-house legal team and contains legal advice "on the most likely terms of a" sales transaction.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 1864 because plaintiff failed to produce evidence to support its claim that the document is privileged.

According to the log, entry 1864 is identified as having been authored by "IDT" and received by David Greenblatt, an IDT employee, Declaration of Hannah Stotts-Bumstead, dated May 5, 2008, at Ex. 23, that plaintiff asserts embodies work product and privileged communications with Jim DiGiorgio about the corporation's patent portfolio.  Again, plaintiff conceded that it does not know the identity of the author of entry 1864.  See id.  Moreover, there is nothing in the record to show it was prepared in anticipation of litigation and for no other purpose.  Lastly, the section titled "most likely" does not contain any privileged material on its face.  Instead, it contains terms of a potential financial agreement, including time frame and payment method.  Absent proof of the identity of the author and the purpose for which it was created, the plaintiff cannot establish that the document is privileged.

x.  Entry 1870 (Exhibit M)

The Special Master concluded that the certification of IDT's in-house counsel attesting to

the legal nature of log entry 1870 was insufficient to sustain the privilege assertion because in-house counsel could not identify who marked up the document, when, or why.  Plaintiff argues that entry 1870 is a draft of IDT's tender offer that was drafted by IDT's inside and outside lawyers for filing with the Securities and Exchange Commission ["SEC"] and the Special Master erred in failing to credit the declaration of IDT's in-house counsel that asserts that the edits were those of lawyers.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 1870 because the plaintiff provided no evidence as to who marked up the document, when or why.

According to the log, entry 1870 is a draft SEC filing allegedly reflecting communications with the law firm of Kramer Levin.  The log describes the author as "Net2Phone, Inc. NtoP acquisition IDT Corporation."  The plaintiff, however, did not present evidence that establishes the author and conceded that it does not know the identity of the author.  See id. at 25-26.  The plaintiff submitted the Certification of Dov Schwell, Senior Vice President for IDT, dated March 18, 2008, to support its contention that these documents reflect confidential attorney-client communications, Stott-Bumsted Dec. Ex. 20, but it was untimely and will not be considered.  Thus, the plaintiff failed to submit timely evidence that identifies the author of these edits.  Without the identity of the author of the markings, the plaintiff cannot establish that they are privileged.

xi.  Entry 3814 (Exhibit N)

The Special Master concluded that the certification of IDT's in-house counsel attesting to the legal nature of log entry 3814 was insufficient to sustain the privilege assertion because it embodies a communication among non-lawyers and the document is not clearly privileged on its

face and the declaration submitted did not identify the author of the markings on the document. Plaintiff argues that entry 3814 is a draft of IDT's tender offer that was drafted by IDT's inside and outside lawyers for filing with the SEC and that the Special Master erred in failing to credit the certification of IDT's in-house counsel who attested to the legal nature of entry 3814 even though he could not identify its author.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 3814 because plaintiff's untimely declaration did not identify if counsel made any of the marks.

According to the log, the draft of the SEC filing is dated November 10, 2005 and the author is identified as a person at "semdd.com" and the recipient is a person at IDT.  The plaintiff has conceded that it does not know the identity of the author of the markings on entry 3814.  See Pl. Br. at 25-26.  Moreover, at the time of these communications, IDT and plaintiff did not share a common legal interest and when the document was shared between them, it lost any privilege status.  For these reasons, the privilege is not applicable.

xii.  Entry 1142 (Exhibit O)

The Special Master concluded that plaintiff failed to present evidence to show that log entry 1142, an email from IDT's in house counsel Jim DiGiorgio to David Greenblatt about the VOIP patents, was privileged and there is no way to tell if it was a privileged communication on its face.  Plaintiff argues that, because the email was written by its in house counsel, the only plausible interpretation is that in-house counsel is "proposing a meeting at which he will render legal advice concerning legal action," Pl. Br. at 26, and a corporation's declaration is not needed to establish the privilege.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 1142 and plaintiff presented no evidence to

support its clam of privilege despite having had an opportunity to do so.

Although the log asserts that the email contains legal advice, the face of the document does not support this description and plaintiff has presented no evidence to show that it was associated with an effort to secure legal advice.  The mere fact it was from an attorney, without showing its purpose, is insufficient to sustain the privilege since the privilege applies only to communications engaged in for the purpose of securing or providing legal advice.  As such, the Special Master's ruling will not be disturbed.

xiii.  Entries 1332 & 1333 (Exhibit P)

The Special Master concluded that the plaintiff did not submit evidence that shows log entries 1332-33 are privileged and he could not determine from their face that they embody privileged communications.  The plaintiff contends that the portion of the document summarizing a meeting between Binyamin Bauman, a nonlawyer, and the Chairman of IDT's Board of Directors concerning patent enforcement embodies a request for legal advice and is privileged.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entries 1332-33 because there is nothing to show that it involves a discussion between non-lawyers reflecting advice of counsel.

According to the log, entries 1332-33 are March 28, 2006 emails from Binyamin Bauman to David Lando, Net2Phone employees, Stott-Bumsted Dec. at Ex. 23, that contain communications with in-house counsel regarding the patent portfolio.  The emails, however, were not exchanged between attorneys and their contents do not reflect legal advice.  Moreover, the plaintiff has submitted no evidence to supports its claim of privilege regarding these

documents.  Thus, the Special Master's conclusion that the documents are not privileged is correct.

    xiv.  <u>Entry 1337 (Exhibit Q)</u>

    The Special Master concluded that entry 1337, a February 21, 2006 email from Philip Florenzo, an attorney in private practice, to David Lando, his client at Net2Phone, <u>see</u> <u>id.</u>, forwarding slides prepared by Joseph John, a senior technical advisor in IDT's in-house Intellectual Property group, contains material that is purely factual and is thus not protected by privilege and plaintiff did not timely submit other evidence to establish its claim of privilege.  In addition, the Special Master noted that the document was shared with IDT at a time that plaintiff and IDT did not share a common legal interest.  The plaintiff asserts that the communication of these facts was for obtaining legal advice and is protected by the attorney-client privilege and that the Declaration of Joseph John explained this was the purpose.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 1337 because he correctly disregarded Mr. John's Declaration and correctly acknowledged that, even if the document were privileged, that privilege had been waived.

    According to the log, the plaintiff asserts that the email and attachment reflects legal advice from in-house patent counsel.  Even if this were established, the contents actually emanated from an IDT employee during the period before the tender offer had occurred.  As stated previously, the common interest doctrine does not protect communications with IDT during this period.  Moreover, the only evidence to support the privileged assertion comes in from the untimely submission of the Declaration of Joseph John.  <u>See</u> Stott-Bumsted Dec. at 20. Since that evidence is precluded, the plaintiff has failed to timely submit competent evidence to

support its privilege claims.  As such, the Special Master did not err in concluding that no privilege attached to these documents.

      xv.  <u>Entries 1840 (Exhibit R)</u>

      The Special Master concluded that plaintiff produced no evidence that establishes log entry 1840, a draft of a 2005 operation plan with handwriting, is protected by privilege and nothing on the face of the document reveals that it is privileged.  Entry 1845 (Exhibit S) is a similar document without handwriting.  The plaintiff argues that entry 1840 is a draft presentation by IDT's in-house legal group and contains legal advice and legal services provided in 2005.  Plaintiff asserts that the face of the document demonstrates its legal nature, and thus it was not required to provide a declaration to establish that it is privileged.  Plaintiff also notes that the Special Master sustained the privilege concerning a similar document.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 1840 because plaintiff did not present an affidavit concerning the privilege and did not bring to the attention of the Special Master the similarity between 1840 and 1845, even though he allowed plaintiff to move for reconsideration.

      According to the log, this document is described as a "presentation" that the IDT Phoenix Group authored.  Plaintiff describes it as a privileged communication with Mr. DiGiorgio about patents.  Despite this description, the plaintiff has failed to disclose the actual author of the document or handwriting on entry 1840, and indeed conceded that it does not know the identity of the author of the handwritings on entry 1840.  <u>See</u> Pl. Br. at 27.  Moreover, the document is titled "2005 Operating Plan" and does not contain any legal advice.  Without the identity of the author or proof that it was created to obtain or convey legal advice, the plaintiff cannot establish

that the document is privileged.

xvi.  Entry 2783 (Exhibit T)

The Special Master concluded that log entry 2783, an April 2, 2003 email from Anthony Tobey, a member of IDT's information technology staff, to a person associated with IXtelecom, is not privileged because it is between non-lawyers, nothing on its face shows it is privileged, and plaintiff submitted no evidence to establish it is privileged.  The plaintiff argues that the first sentence of the email is privileged on its face because it conveys legal advice received from IDT's legal department and thus there is no need for a certification to establish it as privilege. The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 2783 because it involves a communication between non-lawyers and plaintiff failed to supply evidence to show that the entry was privileged.

According to the log, plaintiff describes the email as reflecting privileged communications between IDT's business and in-house counsel about the information-technology policy.  Despite this entry, the plaintiff concedes that the communication is between non-lawyers. See id. at 28.  The plaintiff did not submit any evidence that shows the information relayed between the non-attorneys is legal advice.  Moreover, a review of this document shows that it is a group email about the employees' access to external file sharing networks and does not contain legal advice.  Thus, the plaintiff has not established that the document is privileged.

xvii.  Entry 4562 (Exhibit U)

According to the log, entry 4562 is an email and attachment from Jim DiGiorgio to Luis Diaz that relates to monetizing intellectual property.  The Special Master concluded that the

plaintiff has waived the privilege relating to the Monetization Plan by its disclosure of documents about the same subject.  The plaintiff argues that entry 4562 is an email between two attorneys that contains both non-privileged and privileged information and that the privileged portion should be disclosed but the remainder should be shielded because it embodies legal advice to IDT about intellectual property and does not address the Monetization Plan.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 4562 because this document is within the scope of the waiver and plaintiff concedes the document should have been produced.  Pl. Br. at 28.

A review of the document shows that the email merely forwards the attachment and the attachment is a document addressing monetization.  For the reasons set forth herein, to the extent a privilege covered this subject, it has been waived.  As such, the Special Master's conclusions will not be disturbed here.

xviii.  Entries 8832 & 8833 (Exhibit C) (which are contained in entry 8034)

According to the log, entries 8832 and 8833 are January 24, 2005 emails among Jim DiGiorgio, Peter Emanuel, a GE lawyer, and Laurence Rosenberg, a member of GE's Technology Group, which were shared with seven GE staff members about a European patent. Although the Declaration of Kenneth Glick, an attorney for GE, reflects that GE maintained the confidentiality of its internal discussions with counsel and the information it received and shared with IDT, see Stott-Bumsted Dec. Ex.18 (attaching the Declaration of Kenneth Glick dated Jan. 14, 2008), the Special Master found that plaintiff failed to timely identify one of the recipients, Ed Howard.  Thus, the Special Master concluded that the plaintiff failed to meet its burden of showing based on timely submitted evidence that this email was privileged.  The plaintiff argues

that the Special Master erred in his conclusion because, in light of Glick's Declaration, it was apparent that the email was confidential and it had timely produced evidence that shows Mr. Howard was a Net2Phone lawyer.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply because the plaintiff failed to meet its burden of proof and because the communications between IDT and GE are not privileged.

The Court concludes that even though the plaintiff timely identified Ed Howard, the contents were shared with GE personnel and, for the reasons already discussed, these communications are not privileged.  Thus, the record before the Court shows that the plaintiff failed to meet its burden to withhold the document on privilege grounds.

### xix.  Entry 9061 (Exhibit C)

For the same reasons, the privilege assertion over entry 9061, which is represented to be duplicated in 8834 is overruled.

### xx.  Entry 9073 (Exhibit V) (redacted versions of already produced materials)

Document entry 9073 is an email dated January 20, 2005 from Arthur Dubroff at Net2Phone to Claude Pupkin and Glenn Williams and copies were provided to Lione Alroy, Michael Pastor, Mitch Silverman, Ken Kaplan and Nicholas Day.  These individuals are associated with Net2Phone or IDT.  The Special Master concluded that privilege did not apply to the redacted portions of entry 9073 because the plaintiff did not submit any proof the privilege applied and nothing from the face of the document indicated it was privileged.   The plaintiff argues that the portions of one paragraph are privileged because it contains communications from Arthur Dubroff to Net2Phone attorneys about actions to be taken with respect to Net2Phone's

45

intellectual property.  The defendants argue that the Special Master did not err when he concluded that the privilege did not apply to entry 9073 because the plaintiff failed to meet its burden of proof.

As to entry 9073, this Court finds that the plaintiff fails to meet its burden of establishing that this document is privileged with timely produced evidence and therefore the privilege assertion is overruled.  Moreover, a review of the document reveals that it does not contain or seek legal advice but rather pertains to valuation of assets.  Furthermore, as stated previously, even if it were privileged, the privilege about valuation has been waived and because this document discusses valuation it must be disclosed.

### xxi. Entry 4382 (Exhibit W)

The Special Master concluded that privilege did not apply to log entry 4382, a June 18, 2004 email and attachment from Pat Gartner to Luis Diaz, an IDT attorney, because it forwarded as an attachment drawings created by a non-lawyer that do not appear privileged on their face. Moreover, although the log states the email and attachment discuss obtaining legal advice about intellectual property, the Special Master concluded that the Declaration of Luis Diaz did not address this document, no timely evidence was adduced to support the privilege claim, and he refused to consider the untimely submissions purported to support plaintiff's assertion of privilege.  The plaintiff argues that, because the document was sent to an attorney, it is only plausible to conclude that it was sent in connection with a request for legal advice about an intellectual property matter and the declaration of Mr. Gartner supports this conclusion.  The defendants argue that the Special Master did not err when he declined to consider the untimely evidence and in any event, it did not address the document and the plaintiff did not prove that the

privilege applies to entry 4382.  The defendants also argue that any argument that is nonresponsive to any discovery demand cannot be a basis to object to the privilege ruling because this is not an issue ripe for resolution in this context.

This Court finds that the timely submission of Luis Diaz's Declaration does not satisfy its burden because Mr. Diaz's Declaration does not address this document.  Moreover, the Court will not consider plaintiff's untimely submissions.  Finally, a review of the document reflects it embodies factual information and does not on its face reflect legal advice.  As such, the plaintiff has failed to meet its burden to show that the document is covered by the attorney-client privilege.

xxii.  <u>Additional Entries</u>

Neither party's submission addresses the Special Master's decision regarding privilege to log entries 4638-39, 4675, 3893, and 1766.  As such, the Court will deem any objections thereto waived and the Court will not address the Special Master's decision on these documents.

E. <u>Motion to Seal</u>

The plaintiff seeks to seal certain documents submitted in connection with its objections to the Special Master's Report.  Plaintiff has not demonstrated that these documents warrant sealing.  First, the Special Master's Report was publicly filed without opposition by the plaintiff and discloses information the plaintiff now seeks to seal.  Second, the communications the plaintiff's seeks to seal relate to matters that occurred several years ago and thus the need to seal what may have been confidential information no longer exists as there is no showing that there would be present harm from disclosure.  Lastly, to the extent the request to seal is made to

preserve the confidential nature of alleged privileged documents, the assertion of privilege has been overruled and the need for confidentiality for this purpose is moot.  Thus, plaintiff's motion to seal the documents in connection with the objection is denied.

### III.  Conclusion

For the foregoing reasons, the Special Master's findings of fact, conclusions of law, and procedural determinations are affirmed in their entirety and plaintiff's motion to seal is denied. The plaintiff shall produce the withheld documents no later than June 30, 2008.


s/Patty Shwartz
United States Magistrate Judge


Date: June 25, 2008

48